UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALTON ROSS                                                    CIVIL ACTION

VERSUS                                                        NO. 17-8689

W&T OFFSHORE, INC.                                            SECTION: "G"(3)

## ORDER AND REASONS

Pending before this Court is Defendant W&T Offshore, Inc.'s ("W&T") "Motion for Partial Summary Judgment."[1] In the motion, W&T argues that the alleged accident at issue in the case did not occur on a vessel and Plaintiff Alton Ross ("Plaintiff") is therefore not a Jones Act seaman.[2] In opposition, Plaintiff argues that on or around April 30, 2018, Defendant received records showing that Plaintiff's employer classified him as a Jones Act seamen.[3] Having considered the motion for partial summary judgment, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the motion.

## I. Background

In the Petition, Plaintiff alleges that he worked as a galley-hand/cook for Bailey's Support Services, Inc. ("Bailey's") while stationed on an oil production platform owned by W&T.[4] Plaintiff asserts that on July 21, 2016, when he was working on W&T's Ship Shoal 349-A ("SS

---

[1] Rec. Doc. 41.

[2] *Id.* at 1.

[3] Rec. Doc. 46 at 1.

[4] Rec. Doc. 1-1 at 3–4.

1

349-A"), he slipped and fell on a wet galley floor.[5] Plaintiff alleges that the fall caused several injuries, and the injuries are the result of the negligence of W&T.[6]

On July 26, 2017, Plaintiff filed suit against W&T in the Civil District Court for the Parish of Orleans, State of Louisiana.[7] In the Petition, Plaintiff alleges that SS 349_A is a vessel, and he seeks to recover damages under the Jones Act and general maritime law.[8] The Petition also raises claims under Louisiana law.[9] On September 6, 2017, W&T removed the case to this Court.[10]

On October 12, 2017, W&T filed a motion for summary judgment, asserting that Plaintiff's claims were barred under Louisiana's one-year prescriptive period.[11] Plaintiff opposed that motion.[12] On July 17, 2018, the Court denied that motion, finding that even if Louisiana law applies to this case as W&T contended and Plaintiff contested, the instant suit was timely filed.[13]

On August 14, 2018, W&T filed the instant motion for partial summary judgment.[14] On October 3, 2018, Plaintiff filed an opposition.[15] With leave of Court, W&T filed a reply on October

---

[5] *Id.* at 4.

[6] *Id.*

[7] *Id.* at 1.

[8] *Id.* at 3–4.

[9] *Id.* at 4.

[10] Rec. Doc. 1.

[11] Rec. Doc. 8.

[12] Rec. Doc. 27.

[13] Rec. Doc. 40.

[14] Rec. Doc. 41.

[15] Rec. Doc. 46.

10, 2018.[16]

## II. Parties' Arguments

### A.  *W&T's Arguments in Support of the Motion for Partial Summary Judgment*

In the motion, W&T argues that it is entitled to partial summary judgment on Plaintiff's Jones Act claims and general maritime law claims because the alleged accident did not occur on a vessel.[17] First, W&T asserts that Plaintiff is not a Jones Act seaman because the the SS 349-A is not a vessel.[18] Next, W&T argues that Plaintiff's unseaworthiness claim brought under general maritime law fails because unseaworthiness claims require a vessel and the SS 349-A is not a vessel.[19] Finally, W&T contends that Plaintiff's negligence claim brought under general maritime law fails because Plaintiff cannot show a maritime situs or a connection to traditional maritime activity.[20]

####     1.    **Jones Act Claim**

First, W&T asserts that Plaintiff is not a Jones Act seaman because the SS 349-A is not a vessel as defined under the Jones Act and case precedent.[21] W&T alleges that "[t]he foundational question in any Jones Act case is whether the plaintiff qualifies as a Jones Act seaman," and that "the most 'fundamental prerequisite' [in a Jones Act case] is whether any of the structures or

---

[16] Rec. Doc. 49.

[17] Rec. Doc. 41-2 at 1.

[18] *Id.* at 7.

[19] *Id.* at 10.

[20] *Id.* at 11.

[21] *Id.* at 7.

vehicles worked on by the plaintiff count as vessels." [22] W&T then cites § 3 of the Jones Act and the United States Supreme Court case *Stewart v. Dutra Constr. Co.*,[23] to support the assertion that a "vessel is defined for the purposes of the Jones Act as 'every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water.'"[24] W&T asserts that "[u]nder [section] 3, a 'vessel' is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment."[25] W&T further asserts that "a watercraft is not 'capable of being used' for maritime transport in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation."[26]

W&T argues that the SS 349-A is not a vessel because it is "incapable of any movement whatsoever."[27] W&T asserts that the SS 349-A is permanently affixed to the seafloor by 8 pilings and has not moved from its location in over two decades.[28] W&T further asserts that the "SS 349-A does not float, has no navigational equipment, no means of self-propulsion and cannot be towed."[29] Accordingly, W&T argues that the SS 349-A is not a vessel, and "[a]s Plaintiff was not

---

[22] *Id.* (citing *Manuel v. P.A.W. Drilling & Well Serv., Inc.*, 135 F.3d 344 (5th Cir. 1998)).

[23] 543 U.S. 481 (2005).

[24] Rec. Doc. 41-2 at 7 (quoting 1 U.S.C. § 3 and citing *Stewart*, 543 U.S. at 490 for the proposition that "section 3 defines vessel for the purpose of the Jones Act").

[25] *Id.* (quoting *Stewart*, 543 U.S. at 496).

[26] *Id.* at 7–8.

[27] *Id.* at 9.

[28] *Id.* at 10.

[29] *Id.*

injured aboard a vessel, his claims against W&T for negligence under the Jones Act must fail."[30]

W&T further contends that the SS 349-A "is an oil and gas production platform that has been permanently affixed to the Outer Contintental Shelf in the Gulf of Mexico for over two decades."[31] W&T avers that "[b]ecause Plaintiff's alleged accident occurred on a fixed production platform and not a vessel, Plaintiff's claims against W&T are governed by the Outer Continental Shelf Lands Act which mandates application of Louisiana law."[32] Consequently, W&T urges this Court to dismiss Plaintiff's Jones Act and general maritime law claims, but allow Plaintiff's "cause of action against W&T for negligence under Louisiana law" to proceed under the Outer Continental Shelf and Land Act ("OCSLA").[33]

### 2. Unseaworthiness Claim Under General Martime Law

Similarly, W&T argues that Plaintiff's unseaworthiness claim must fail because the SS 349-A is not a vessel.[34] W&T cites *Lewis v. Lewis & Clark Marine, Inc.*,[35] for the proposition that "[u]nseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea."[36] W&T contends that "[b]ecause a claim for unseaworthiness requires the existence of a vessel, and the SS 349-A is not a vessel, Plaintiff's

---

[30] *Id.*

[31] *Id.* at 1.

[32] *Id.* at 1–2.

[33] *Id.* at 2.

[34] *Id.*

[35] 531 U.S. 438 (2001).

[36] *Lewis*, 531 U.S. at 441.

5

claim for unseaworthiness must fail."[37]

### 3. Negligence Claim Under General Maritime Law

Last, W&T argues that Plaintiff's negligence claim brought under general maritime law must fail because Plaintiff cannot meet the two requirements for a tort claim in admiralty.[38] W&T alleges that "to give rise to a tort claim in admiralty, an incident must have both a maritime situs and a connection to traditional maritime activity."[39] W&T asserts that the "situs requirement or 'location test'" fails because Plaintiff's alleged injury occurred on a fixed platform, which is not part of navigable waters under maritime law.[40] Further, W&T asserts that the connection test fails because "the activity which caused the Plaintiff's injury [does not] bear a significant relationship to traditional maritime commerce."[41] W&T avers that the Fifth Circuit approved of a district court's rationale that general maritime law was inapplicable where there was no vessel.[42] W&T thus argues that because the SS 349-A is not a vessel, general maritime law does not apply to this case.[43] Accordingly, W&T urges the Court to grant summary judgment on all of Plaintiff's claims brought under the Jones Act and general maritime law.[44]

---

[37] Rec. Doc. 41-2 at 10.

[38] *Id.* at 11.

[39] *Id.* (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 (1995); *Sisson v. Ruby*, 497 U.S. 358 (1990); *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 (1982); *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249 (1972)).

[40] Rec. Doc. 41-2 at 11.

[41] *Id.*

[42] *Id.* at 12 (citing *Holifield v. Great Lakes Dredge & Dock Co.*, 53 F.3d 1280 (5th Cir. 1995)).

[43] *Id.*

[44] *Id.* at 12–13.

### B. *Plaintiff's Arguments in Opposition to the Motion for Partial Summary Judgment*

In opposition, Plaintiff argues that W&T has specific knowledge that Plaintiff is in fact a Jones Act seaman.[45] Plaintiff asserts that on or about April 30, 2018, W&T received subpoenaed records from Condon Claims Management ("Condon Claims"), the insurer/claims administrator to Plaintiff's former employer Bailey's.[46] Plaintiff alleges that the documents "reveal that Plaintiff was a Jones Act seaman at the time he was injured, due to hours worked on other vessels prior to being assigned to Defendant's offshore platform."[47] In support of this argument, Plaintiff presents a document labeled Exhibit C, showing that during his employment with Bailey's Plaintiff worked aboard four vessels, the HOUSTON, CHARLESTON, ST. ELAINE, AND GI 115, which were owned by three different companies, Alliance, Baywater, and LLog.[48] Plaintiff contends that W&T filed the instant motion "with full knowledge that the aforementioned records existed."[49] Therefore, Plaintiff avers that "the Defendant should not be permitted to rely upon its own misrepresentations in order to obtain summary judgment herein on this vital issue."[50]

### C. *W&T's Arguments in Further Support of the Motion for Partial Summary Judgment*

In reply, W&T argues that Plaintiff has not proved that he attained Jones Act seaman status while working on other assignments for Bailey's.[51] W&T further asserts that even if Plaintiff

---

[45] Rec. Doc. 46 at 1.

[46] *Id.*

[47] *Id.*

[48] Rec. Doc. 46-4.

[49] Rec. Doc. 46 at 1.

[50] *Id.* at 1–2.

[51] Rec. Doc. 49 at 2.

obtained Jones Act seaman status while working for Bailey's in prior assignments, this "seaman status" ended when Plaintiff was permanently re-assigned to the SS 349-A.[52] Finally, W&T argues that while Plaintiff worked on vessels owned by W&T, Plaintiff never attained status as a Jones Act seaman.[53]

First, W&T argues that Plaintiff has not proved that he attained seaman status on prior assignments.[54] W&T asserts that Exhibit C is inadmissible hearsay.[55] W&T asserts that "hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent evidence to oppose a motion for summary judgment."[56] Consequently, W&T argues that "the purported factual basis for Plaintiff's seaman status is inadmissible and cannot be used to defeat W&T's motion."[57]

W&T next argues that "even if admissible, Exhibit C does not provide a factual basis to support Plaintiff's claimed seaman status."[58] W&T asserts that an employee who obtains seaman status must have a certain connection to the vessel and must spend at least thirty percent of his time in the service of the vessel.[59] W&T argues that Exhibit C does not establish that "Bailey's assigned Plaintiff to work on a vessel, or an identifiable fleet of vessels under common ownership

---

[52] *Id.*

[53] *Id.*

[54] *Id.* at 4.

[55] *Id.* at 5.

[56] *Id.* at 4–5 (quoting *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987) and citing Fed. R. Civ. P. 56(C)(2); *Sapp v. Wood Group PSN, Inc*., 153 F. Supp. 3d 947, 954 (E.D. La. 2015)).

[57] Rec. Doc. 49 at 5.

[58] *Id.*

[59] *Id.* at 5–6.

or control, as required to establish seaman status."[60] W&T alleges that the most Exhibit C shows is "that Plaintiff worked on four different vessels, with three different owners, under the direction and control of unnamed charterers."[61]

W&T then argues that "[m]ore importantly, Exhibit C plainly shows that none of the vessels Bailey's assigned Plaintiff to work on…were under the common control or ownership of W&T."[62] W&T thus asserts that even if the evidence somehow establishes that Plaintiff worked more than thirty-percent of his time on vessels as a Jones Act seaman, none of them were owned by the actual defendant in this case.[63] W&T contends that the fact that Plaintiff spent zero percent of his alleged "seaman status" aboard W&T vessels establishes that Plaintiff was not a Jones Act seaman in regards to W&T.[64]

W&T further argues that even if Plaintiff was a Jones Act seaman before he began work for W&T, this status ceased when Plaintiff was permanently reassigned to the SS 349-A.[65] W&T avers that "it is well settled that 'a worker who is permanently assigned to a job on land or on non-navigable waters is not a seaman within the meaning of the Jones Act.'"[66] W&T asserts that because Plaintiff was permanently reassigned to the SS 349-A, a non-vessel, Plaintiff was not a

---

[60] *Id.* at 6.

[61] *Id.*

[62] *Id.*

[63] *Id.* at 6–7.

[64] *Id.* at 7.

[65] *Id.* at 2.

[66] *Id.* at 3 (quoting *Chambers v. Wilco Industrial Services*, LLC, 2010 WL 3070392, at *7 (E.D. La. Aug. 3, 2010) (Africk, J.)).

Jones Act seaman while on the SS 349-A.[67] Accordingly, W&T argues that the motion for partial summary judgment should be granted.[68]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[69] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[70] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[71] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[72] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[73]

The party seeking summary judgment always bears the initial responsibility of informing

---

[67] *Id.* at 3–4.

[68] *Id.* at 10.

[69] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[70] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[71] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[72] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[73] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[74] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[75] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[76] In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[77] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[78] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not

---

[74] *Celotex*, 477 U.S. at 323.

[75] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[76] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[77] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[78] *Little*, 37 F.3d at 1075.

qualify as competent opposing evidence.[79]

### IV. Analysis

As stated more fully above, W&T argues that Plaintiff's Jones Act claim, unseaworthiness claim, and negligence claim brought under general maritime law fail because the SS 349-A is not a vessel and Plaintiff was not a Jones Act seaman.[80] In opposition, Plaintiff avers that subpoenaed employment documents informed W&T of Plaintiff's Jones Act seaman status, and because the motion ignores this fact, partial summary judgment should be denied.[81]

*A.  Jones Act Claim*

W&T argues that the SS 349-A is an oil production platform, not a vessel, and therefore, Plaintiff cannot be considered a Jones Act seaman.[82] "The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury. Nevertheless, 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.'"[83] "To maintain a cause of action under the Jones Act, the plaintiff must be a seaman."[84] "Under the Jones Act, a 'seaman' is a term of art for an employee whose duties 'contribut[e] to the function of the vessel or to the accomplishment of its mission' and who has 'a connection to a "vessel" in navigation ... that is substantial in terms of both its duration and

---

[79] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[80] Rec. Doc. 41-2 at 1–2.

[81] Rec. Doc. 46 at 1–2.

[82] Rec. Doc. 41-2 at 1–2.

[83] *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991)).

[84] *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345–46 (5th Cir. 1999).

its nature.'"[85] "The existence of a vessel is thus crucial to determining seaman status under the Jones Act."[86]

In the case *Stewart v. Dutra Construction Co.*,[87] the United States Supreme Court defined the term "vessel" for the purposes of the Jones Act.[88] The Court declared that "a 'vessel' is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment."[89] "A vessel's primary purpose need not be navigation or transportation, and it need not be in motion at the time of the seaman's injury,"[90] but the Court specifically noted that "a watercraft is not 'capable of being used' for maritime transport in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement."[91]

In *Mendez v. Anadarko Petroleum Co.*, the Fifth Circuit determined that the RED HAWK spar was not a vessel because although it floated, it was "permanently moored by six mooring lines that are attached to 18-foot anchors deeply embedded into the sea floor under 5,000 feet of water."[92] The court also found it significant that the RED HAWK was "theoretically capable of

---

[85] *Cain v. Transocean Offshore USA, Inc*., 518 F.3d 295, 298 (5th Cir. 2008) (quoting *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995) (internal quotation marks and citation omitted)).

[86] *Id.* (quoting *Holmes v. Atl. Sounding Co.,* 437 F.3d 441, 446 (5th Cir. 2006)).

[87] 543 U.S. 481 (2005).

[88] *Mendez v. Anadarko Petroleum Co.*, 466 F. App'x. 316 (5th Cir. 2012).

[89] *Stewart*, 543 U.S. at 497 (quoting 1 U.S.C. § 3).

[90] *Mendez,* 466 F. App'x. at 495–96 (citing *Stewart,* 543 U.S. at 495–96).

[91] *Stewart,* 543 U.S. at 494–95.

[92] *Mendez*, 466 F. App'x at 318–19.

maritime transportation but not practically capable."[93]

Here, W&T avers that the "SS 349-A is incapable of any movement whatsoever." W&T presents the declaration of Antoine Gautreaux ("Mr. Gautreaux"), W&T's Vice President of Production Operations, stating that the SS 349-A has been permanently affixed to the seafloor by 8 pilings since 1996.[94] Mr. Gautreaux also asserts that the SS 349-A "has never moved from that location."[95] Further, Mr. Gautreaux contends that the "SS 349-A does not float, has no navigational equipment, no means of self-propulsion and cannot be towed."[96] Plaintiff does not present any contrary evidence to prove that the SS 349-A is a vessel. Further, in his deposition, Plaintiff admitted that he does not recall ever experiencing the SS 349-A moving and that he does not know if the SS 349-A can move.[97]

Similar to the RED HAWK in *Mendez*, the SS 349-A cannot be classified as a vessel under Fifth Circuit precedent. It was permanently affixed to the sea floor and has not moved in two decades. The SS 349-A has never been used as a form of transportation as it is physically incapable of movement. The structure does not have a propulsion system or any other means of moving from itself from one location to another. Thus, it is both practically and theoretically incapable of movement.[98]

In lieu of arguing that the SS 349-A is a vessel that would afford him seaman status,

---

[93] *Id.* at 319.

[94] Rec. Doc. 41-5 at 1.

[95] Rec. Doc. 41-2 at 10.

[96] *Id.*

[97] Rec. Doc. 41-7 at 16.

[98] *See Stewart,* 543 U.S. at 494–95.

Plaintiff contends that he is a Jones Act seaman based on his "hours worked on other vessels prior to being assigned to Defendant's offshore platform."[99] Plaintiff asserts that Bailey's assigned him to work on vessels for three other companies, and he spent more than sixty percent of his time as a seaman.[100]

In *Chandris, Inc. v. Latsis*, the Supreme Court set forth a two-factor test for determining whether an individual is a seaman under the Jones Act.[101] In *Chandris*, the Court declared that:

> [T]he essential requirements for seaman status are twofold. First, . . . an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission...Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.[102]

The *Chandris* Court stated that "the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[103] However, the Supreme Court recognized that "[w]hen a maritime worker's basic assignment changes, his seaman status may change as well."[104] Therefore, an employee who has worked for years in an employer's shoreside headquarters and who is then reassigned to a ship in a classic seaman's job qualifies for seaman status even if he is injured shortly after reassignment.[105] Conversely, "a worker who has been reassigned to a land-based job cannot claim seaman status

---

[99] Rec. Doc. 46 at 1.

[100] *Id.*; Rec. Doc. 46-4.

[101] 515 U.S. 347 (1995).

[102] 515 U.S. at 368.

[103] *Id.* at 371.

[104] *Id.* at 372.

[105] *Id.*

15

based on prior service at sea."[106]

In this case, Plaintiff asserts that prior to working aboard the SS 349-A, he obtained Jones Act seaman status through his employment on the HOUSTON, CHARLESTON, ST. ELAINE, AND GI 115, which were owned by three different companies, Alliance, Baywater, and LLog.[107] However, W&T has presented evidence showing that on April 21, 2016, Plaintiff was permanently assigned to work on the SS 349-A.[108] Specifically, W&T presents a declaration of Ema Haq, the President of Bailey's, which states that "[b]etween April 21, 2016 and July 21, 2016, [] Bailey's provided [Plaintiff] to W&T to work as a cook on W&T's SS 349-A platform on a permanent basis."[109] Plaintiff does not present any evidence to contest this assertion. Furthermore, when Plaintiff was asked during his deposition whether he was "being permanently assigned to that platform," he responded, "That is my rig."[110] Therefore, even assuming that Plaintiff has submitted competent summary judgment evidence showing that he was a Jones Act seaman at some point prior to being assigned to the SS 349-A, the undisputed evidence shows that he was reassigned to a job that was aboard an offshore oil platform, which is not a vessel under the Jones Act. Accordingly, the Court finds that there is no genuine issue of material fact and Defendant is entitled to summary judgment on Plaintiff's Jones Act claim.

### B.  *Unseaworthiness Claim Under General Maritime Law*

W&T contends that the Court should grant it summary judgment on Plaintiff's

---

[106] *Becker v. Tidewater, Inc.*, 335 F.3d 376, 389 (5th Cir. 2003) (citing *Chandris*, 515 U.S. at 372).

[107] Rec. Doc. 46 at 1; Rec. Doc. 46-4.

[108] *See* Rec. Doc. 49-1.

[109] *Id.*

[110] Rec. Doc. 41-7 at 11–12.

16

unseaworthiness claim because the SS 349-A is not a vessel. Plaintiff does not respond to this argument.

When analyzing an unseaworthiness claim, the Court begins with the premise that "[u]nseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea."[111] Per Fifth Circuit precedent, "unseaworthiness requires the existence of a vessel."[112] W&T asserts that based on the evidence, the SS 349-A is not a vessel; it is a fixed platform.[113] The Fifth Circuit has found that fixed platforms are not vessels for the purposes of Jones Act or unseaworthiness claims.[114] Plaintiff does not provide any evidence to argue that the SS 349-A is in fact a vessel for purposes of unseaworthiness claims. Because Plaintiff does not "identify specific facts in the record and articulate" evidence that there is a genuine dispute over whether the SS 349-A is a vessel, the Court grants summary judgment in favor of Defendant on Plaintiff's unseaworthiness claim.[115]

C.   *General Maritime Law Claim*

W&T also urges the Court to dismiss Plaintiff's negligence claim brought under general maritime law because Plaintiff fails to show that his claims meet the requirements for a tort in

---

[111] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001).

[112] *Daniel v. Ergon, Inc.*, 892 F.2d 403, 409 n. 10 (5th Cir. 1990) (citing *Miles v. Melrose*, 882 F.2d 976 (5th Cir. 1989)).

[113] Rec. Doc. 41-2 at 1, 10.

[114] *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 290, 294 n. 11 (5th Cir. 1990); *Holifield v. Great Lakes Dredge & Dock Co.*, 53 F.3d 1280 (5th Cir. 1995) ("This Court has consistently held, as a matter of law, that floating work platforms, not used in navigation, do not constitute vessels."); *Riley v. Alexander/Ryan Marine Servs. Co.*, 983 F. Supp. 2d 884, 890 (S.D. Tex. 2013) (dismissing unseaworthiness claim against a fixed platform [b]ecause a claim for unseaworthiness implicitly requires the existence of a vessel").

[115] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

admiralty.[116] Plaintiff does not respond to this argument.

    The Supreme Court has stated that:

> [a] claim for negligence under general maritime law requires the plaintiff to show that (1) the tort occurred on navigable water or that the injury on land was caused by a vessel on navigable water and (2) the incident had a 'potentially disruptive effect on maritime commerce' and that the activity giving rise to the incident has a 'substantial relationship to traditional maritime activity.'[117]

Here, Plaintiff argues that his injury occurred on the SS 349-A, which is located in the Gulf of Mexico.[118] The Fifth Circuit has stated that "[c]onstruction work on fixed offshore platforms bears no significant relation to traditional maritime activity."[119] W&T has presented evidence that the SS 349-A is an "oil and gas production platform that has been permanently affixed to the Outer Continental Shelf in the Gulf of Mexico off the coast of Louisiana for over two decades."[120] Under Fifth Circuit precedent, cooking on a fixed platform would bear no "significant relation to traditional maritime activity," and Plaintiff's negligence claims under general maritime law would be untenable.[121] Plaintiff does not submit any evidence to create a genuine dispute of fact on this issue. Accordingly, W&T is entitled to summary judgment on Plaintiff's negligence claim brought under general maritime law.

---

[116] Rec. Doc. 41-2 at 11.

[117] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (citation omitted).

[118] Rec. Doc. 1-1 at 3.

[119] *Hufnagel*, 182 F.3d at 352 (holding that plaintiff's tort claim for injury on fixed offshore platform lacked connection to traditional maritime activity).

[120] Rec. Doc. 41-2 at 1.

[121] *Hufnagel*, 182 F.3d at 352.

## V. Conclusion

For the reasons discussed above, there remains no genuine issue of material fact as to whether Plaintiff was a Jones Act seaman at the time of his injury. The undisputed facts support the Defendant's position that Plaintiff was not a seaman. Furthermore, there is no genuine issue of material fact as to whether his unseaworthiness and general maritime law claims are tenable. Therefore, the Court grants W&T's motion for partial summary judgment on Plaintiff's Jones Act and general maritime law claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant W&T's Motion for Partial Summary Judgment[122] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this __10th__ day of December, 2018.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[122] Rec. Doc. 41.